UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JOSEPH G. GORSICH, | |
| Plaintiff, | |
| v. | |
| MICHAEL J. ASTRUE, *Commissioner of Social Security Administration*, | Case No. 09-cv-355-JPG |
| Defendant, | |
| v. | |
| SSAOGC, | |
| Interested Party. | |

## **MEMORANDUM AND ORDER**

This matter comes before the Court on Magistrate Judge Clifford J. Proud's Report and Recommendation (hereinafter "R & R") (Doc. 19), which recommends the Court deny Plaintiff Joseph Gorsich's (hereinafter "Gorsich" or "claimant") Motion for Summary Judgment (Doc. 15), affirm the final agency decision of Commissioner of Social Security Michael Astrue (hereinafter "the Commissioner"), and direct entry of judgment. Gorsich filed an Objection (Doc. 23) to said R & R, to which the Commissioner filed a Response (Doc. 24).

For the following reasons, the Court, *inter alia*, **ADOPTS** the R & R **in its entirety**.

1

**ANALYSIS**

**I.  Standard of Review**

After reviewing a report and recommendation, the Court may accept, reject or modify, in whole or in part, the findings or recommendations of the magistrate judge in the report. Fed. R. Civ. P. 72(b).  The Court must review *de novo* the portions of the report to which objections are made.  The Court has discretion to conduct a new hearing and may consider the record before the magistrate judge anew or receive any further evidence deemed necessary.  *Id.*  "If no objection or only partial objection is made, the district court judge reviews those unobjected portions for clear error."  *Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999).

Here, Gorsich *partially* objected to the R & R.  He did not object to the R & R's proposition that the Administrative Law Judge (hereinafter "ALJ") properly assessed Gorsich's credibility.  The Court has reviewed that portion of the R & R for clear error and does not find the analysis contained therein to be clearly erroneous; as such, that section of the R & R shall be adopted.  Likewise, the Court has reviewed all other unobjected portions of the R & R for clear error and finds that Magistrate Judge Proud's analysis and recommendations do not fall below the generous deference afforded him.  Accordingly, those portions of the R & R shall be adopted as well.

Meanwhile, Gorsich objects on the following grounds: 1) the ALJ posed hypothetical questions to the vocational expert that did not include a limitation discussed in the ALJ's final determination; 2) the ALJ improperly rejected the assessment of Dr. Vest, who examined Gorsich; 3) the ALJ did not include limitations in Gorsich's hands in determining

his Residual Functional Capacity (hereinafter "RFC"); and 4) the ALJ did not adequately discuss the interaction between Gorsich's mental impairment and his physical symptoms. The Court will address each of these arguments in kind.

## II.     Hypothetical Questions

First, Gorsich argues that the ALJ erred by posing hypothetical questions to the vocational expert that did not include claimant's moderate limitation in ability to carry out detailed instructions yet including said limitation in determining Gorsich's RFC. Gorsich relies on the principle that "[h]ypothetical questions posed to vocational experts *ordinarily* must include *all* limitations supported by medical evidence in the record." *Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir. 2002) (former emphasis added and latter emphasis in original). *Young v. Barnhart*, 362 F.3d 995, 1003 (7th Cir. 2004). The legal principle that Gorsich touts, which is not absolute, may be true, but the error resulting from an insufficient hypothetical question must still be harmful to warrant reversal of the ALJ's decision. *Shinseki v. Sanders*, 129 S. Ct. 1696, 1705 ("[T]he party that 'seeks to have a judgment set aside because of an erroneous ruling carries the burden of showing that prejudice resulted.'") (citations omitted); *Terry v. Astrue*, 580 F.3d 471, 478 (7th Cir. 2009).

Here, assuming *arguendo* (in Gorsich's favor) there was no drafting error when the ALJ wrote that claimant "is moderately limited in his ability to carry out detailed instructions[,]" Tr. 24, Gorsich cannot show that any error from the hypothetical questions was harmful or created a conflict. The Seventh Circuit previously explained that someone with "the cognitive capacity to follow simple instructions[]" should have the ability to

3

perform jobs at least as high as the General Educational Development reasoning level of three. *See Terry*, 580 F.3d at 478; *Renfrow v. Astrue*, 496 F.3d 918, 921 (8th Cir. 2007) (job that required level three reasoning was consistent with claimant's ability to follow simple, concrete instructions). Gorsich has the ability to follow simple instructions, as evidenced by a skilled work history that included running a business and handling bookkeeping and bidding for construction jobs. Moreover, again, the ALJ found that Gorsich was only *moderately* limited in his capacity to carry out *detailed* instructions. For these reasons, the ALJ's reliance on the vocational expert's testimony as to jobs that required General Educational Development reasoning levels of two or three cannot be said to constitute harmful error.

### III.  Dr. Vest

Gorsich next argues that the R & R and ALJ wrongfully discounted the testimony of Dr. Vest. To support this proposition, Gorsich relies upon *Moss v. Astrue*, 555 F.3d 556 (7th Cir. 2009), which states that "[a]n ALJ's conjecture is never a permitted basis for ignoring a treating physician's views[, especially if it relies upon the purpose for which a medical opinion is provided]." *Id*. at 560. For example, it would be improper for an ALJ to discredit a medical report wholesale simply because it was provided at the behest of claimant's counsel. *Id*. (citing *Reddick v. Chater*, 157 F.3d 715, 726 (9th Cir. 1998)). In *Moss*, the Seventh Circuit found that the ALJ improperly discounted the opinions of a treating physician because, *inter alia*, the ALJ speculated as to why the physician reported directly to claimant's attorney and the ALJ "altogether failed to address whether [the physician's]

4

medical opinions [were] supported by medically acceptable clinical and laboratory diagnostic techniques." *Moss*, 555 F.3d at 560. Here, this is simply not the case — the ALJ did not broadly speculate as to Dr. Vest's relationship with Gorsich's attorney. Instead, the ALJ more precisely considered the implications of "leading questions and similar inducements" on the assessment form provided by Gorsich's counsel. Moreover, the ALJ explained that Dr. Vest's assessment conflicted with Gorsich's testimony, did not provide an objective basis for the extreme limitations assessed, was inconsistent with the doctor's own report from two months prior,[1] and conflicted with the medical report of Dr. Vital Chapa.[2] These relevant and meaningful considerations remove the ALJ's opinion from the realm of conjecture and sufficiently distinguish this matter from *Moss*.

## IV. Hand Limitations

Gorsich also argues that the ALJ erred by not incorporating limitations in claimant's hands in the RFC findings despite partial amputation of his left index finger, crush injury to a right finger, bilateral carpal tunnel syndrome, and numbness in his hands. The ALJ,

---

[1] Contrary to Gorsich's contentions, the *Chenery* doctrine is not applicable to the R & R's comparison of a treatment note and the report of Dr. Vest. *See Sec. and Exch. Comm'n v. Chenery Corp.*, 318 U.S. 80, 87-88 (1943) (forbidding an agency's lawyers from defending an agency's decision on grounds that the agency itself did not embrace); *Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010). Assuming *arguendo* said comparison did invoke the *Chenery* doctrine, the harmless error exception applies thereto. *See Parker*, 597 F.3d at 924.

[2] Because Dr. Chapa did not testify about claimant's RFC, Gorsich argues that the opinion of Dr. Chapa cannot discount the assessment of Dr. Vest. It was proper for the ALJ to consider Dr. Chapa's testimony, especially considering that the doctor met with Gorsich a mere two weeks before claimant first saw Dr. Vest and that his findings stand in obvious contrast to Dr. Vest's ultimate RFC determination. And, again, the disparity of opinion between Dr. Chapa and Dr. Vest was just one of several reasons why the ALJ chose to discredit Dr. Vest.

however, stated that he did not find Gorsich's hand injuries to be severe due to inconsistencies with claimant's activities and the medical record.

The Court has reviewed the ALJ's findings and holds that they sufficiently account for the lack of hand limitations in the RFC.  Furthermore, the Court finds the R & R to be consistent with the *Chenery* principle due to its general inapplicability and the harmless error exception thereto.  *See supra* note 2.

## V.     Mental-Physical Interaction

Finally, Gorsich maintains that the ALJ erred in not explaining how he considered the interaction between claimant's mental impairment and physical symptoms.  The ALJ, however, *did* explicitly state that he factored the pain disorder into his RFC determination.  Apart from referencing *Carradine v. Barnhart*, 360 F.3d 751 (7th Cir. 2004), Gorsich does not cite a legal basis for this objection, and the Court will not do so for him.  *Carradine*, which explains "that an ALJ cannot deny disability '*solely* because the available objective medical evidence does not substantiate [the claimant's] statements[,]'" *Similia v. Astrue*, 573 F.3d 503, 519 (7th Cir. 2009) (citing 20 C.F.R. s 404.1529(c)(2)) (emphasis in original), is inapposite because there were numerous legitimate reasons for the ALJ to discredit the testimony of Dr. Vest and Gorsich as discussed in this memorandum and order and the R & R.  And, as the Commissioner points out, Gorsich waived this argument by not presenting it to Magistrate Judge Proud.

## CONCLUSION

For the foregoing reasons, the Court **ADOPTS** the R & R (Doc. 19) **in its entirety**, whereby the Court **DENIES** Gorsich's Motion for Summary Judgment (Doc. 15) and **AFFIRMS** the final agency decision of the Commissioner. Further, the Court **DIRECTS** the Clerk of Court to enter judgment accordingly.

**IT IS SO ORDERED.**
**DATED: March 4, 2011**

s/ J. Phil Gilbert
**J. PHIL GILBERT**
**DISTRICT JUDGE**
